**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| IAN SCOTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:23-cv-01027-MHW-CMV |
| | ) | |
| VEEVA SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**VEEVA SYSTEMS, INC.'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56, Defendant Veeva Systems, Inc. hereby moves for summary judgment against Plaintiff Ian Scott on all of his claims.  A memorandum of law in support of this motion is attached.

DATE:  April 29, 2024

Respectfully Submitted,

*/s/Douglas M. Oldham*
Mark W. Wallin (Admitted *pro hac vice*)
mark.wallin@btlaw.com
BARNES & THORNBURG LLP
One North Wacker Drive
Suite 4400
Chicago, Illinois  60606
Telephone:     (312) 357-1313
Facsimile:     (312) 759-5646

Douglas M. Oldham (0088927)
douglas.oldham@btlaw.com
BARNES & THORNBURG LLP
41 South High Street, Suite 3300
Columbus, Ohio 43215
Telephone:     (614) 628-0096
Facsimile:     (614) 628-1433

*Attorneys for Veeva Systems, Inc.*

**MEMORANDUM OF LAW IN SUPPORT**

**INTRODUCTION**

Veeva Systems, Inc. ("Veeva") terminated Plaintiff Ian Scott's ("Plaintiff") employment not because of his alleged disability or his medical leave, but because his skills did not fit with Veeva's evolving business plans.  Plaintiff was hired as an IT Application Architect for the main purpose of replacing NetSuite, Veeva's primary financial application, but Veeva pivoted and decided not to replace NetSuite, meaning it needed no architect for such a project.  Plaintiff's supervisor tried to find a role for Plaintiff in implementing Workday, Veeva's new Employee Success (human resources) application.  However, over time, Veeva narrowed the scope of its Workday implementation and consequently did not need an architect for that project either. Plaintiff's supervisor had no other need for an architect and Plaintiff's employment thus was terminated.  Plaintiff cannot establish that his employment was terminated for any unlawful reason. Therefore, the Court must dismiss his claims in their entirety with prejudice and enter judgment in Veeva's favor.

**SUMMARY OF UNDISPUTED MATERIAL FACTS**

**I.      Plaintiff.**

Plaintiff worked for Veeva as an IT Application Architect between his hire in June 2021 and his termination on February 7, 2023.  Deposition of Ian Scott ("Plf. Dep.")[1] pp. 14, 21, 23.  An architect connects the departments they support with Veeva's global IT strategy, owns the technical design of projects and systems, and oversees execution of projects and systems as a key stakeholder.  Plf. Dep. pp. 24-25; Plf. Dep. Ex. 3.  The architect position is a full-time position. Plf. Dep. p. 25; Plf. Dep. Ex. 3.  Casey Luken, Plaintiff's supervisor in 2022, described an architect

---

[1] Full copies of all cited deposition transcripts will be filed in an appendix that accompanies this motion.

as someone who works on a complex IT project and controls the entire process and design from the initial concept through delivery.  Deposition of Casey Luken ("Luken Dep."), pp. 64-65.

Before Plaintiff worked for Veeva, he worked on financial systems programs for Avaap and DHL Supply Chain.  Plf. Dep. pp. 16, 17.  His experience was primarily related to financial software and he had no experience designing or implementing human resources systems and no experience working with Workday, an enterprise resources planning system.  Plf. Dep. pp. 17-19. Plaintiff allegedly suffers from anxiety and depression.  Plf. Dep. p. 43.

## II.     Veeva.

Veeva is a global provider of industry-specific cloud-based software solutions that address the unique operating challenges and regulatory requirements of companies in the life sciences and consumer products industries.  Declaration of Casey Luken ("Luken Dec.") ¶ 3.  Veeva is an equal-opportunity employer that prohibits discrimination on the basis of disability or any other protected characteristic.  Plf. Dep. p. 22; Plf. Dep. Ex. 2.  Plaintiff received Veeva's Employee Handbook and was familiar with Veeva's equal employment opportunity policies.  Plf. Dep. pp. 21-22.

## III.    Veeva's Priorities Shifted Shortly After It Hired Plaintiff.

At the time Veeva hired Plaintiff, John DeLeo was his direct supervisor.  Plf. Dep. p. 28. DeLeo and Plaintiff had worked together at Avaap and DHL Supply Chain and DeLeo supervised Plaintiff at Avaap.  Plf. Dep. pp. 17, 27.  DeLeo interviewed Plaintiff and recommended his hire. Plf. Dep. p. 26.  DeLeo wanted to hire an IT Application Architect because his plan was to replace NetSuite, an enterprise resources planning system that served as Veeva's primary financial application.  Plf. Dep. pp. 18, 27; Luken Dep. pp. 22-23, 35-36, 38-39, 59, 206.  Veeva would have needed an architect to replace NetSuite, a large-scale project.  Luken Dep. p. 206; Luken Dec. ¶ 6.

However, approximately three weeks after Plaintiff's hire, DeLeo's employment with Veeva was terminated and Veeva canceled the NetSuite replacement project for which Plaintiff

had been primarily hired to work. Plf. Dep. pp. 27-29; Luken Dep. pp. 37-38, 116; Luken Dep Ex. 1, Interrogatory 11. Veeva's Finance team was adamant about remaining on NetSuite. Luken Dep. pp. 53, 60-61. Veeva ultimately signed a new contract renewing NetSuite; it remained Veeva's primary financial application throughout Plaintiff's employment and is still in use today. Plf. Dep. p. 29; Luken Dep. pp. 22-23, 61.

After DeLeo's separation, Plaintiff reported to Director of Enterprise Architecture Kyle Barnes on an interim basis. Plf. Dep. pp. 30-31. Because Plaintiff no longer had the NetSuite project to work on, Barnes had Plaintiff help on a support role working with Veeva's Employee Success[2] systems, an area in which he had no experience. Plf. Dep. pp. 18, 31. In December 2021, Barnes gave Plaintiff his performance evaluation. Plf. Dep. pp. 32-33; Plf. Dep. Ex. 4. On that evaluation, Barnes noted that Plaintiff had shared concerns about whether he was still a fit for his role given DeLeo's departure and Veeva's strategy change. Plf. Dep. p. 33; Plf. Dep. Ex. 4.

## IV.  Veeva Hired Luken as Plaintiff's New Supervisor.

In January 2022, Veeva hired Casey Luken as Director of Finance and ES Systems and he became DeLeo's replacement and Plaintiff's immediate supervisor. Plf. Dep. 35-36; Luken Dep. pp. 16, 60. After his hire, Luken met with Barnes so that Barnes could transfer knowledge to him, including knowledge regarding the employees who would directly report to him. Plf. Dep. p. 38; Luken Dep. pp. 72-73. Barnes told Luken that Plaintiff had felt disengaged since DeLeo's departure, that he did not understand where he fit in at Veeva, that Barnes was concerned about Plaintiff's engagement, and that Barnes was trying to find areas where Plaintiff could be utilized. Plf. Dep. p. 38; Luken Dep. pp. 41, 74-76.

---

[2] Employee Success is the term Veeva uses for human resources. Plf. Dep. p. 26; Luken Dep. pp. 16-17

**V.       Luken Attempted to Integrate Plaintiff into Veeva's Workday Implementation.**

When Luken joined Veeva, one of his major tasks was to implement Workday, a human resources information system ("HRIS") Veeva intended to use as its primary Employee Success system to replace BambooHR, a smaller HRIS that Veeva had outgrown.  Plf. Dep. p. 37; Luken Dep. pp. 23-24, 30-31, 53-55.  Before Veeva could implement Workday, it needed to engage with the vendor, to evaluate which system modules were a good fit for Veeva, and to create an implementation roadmap.  Luken Dep. pp. 54-55.  This was a long-term process, as the actual implementation did not occur until 2023.  Luken Dep. p. 54.

Since Veeva was no longer replacing NetSuite and Plaintiff's employment was no longer necessary for that project, Luken searched for other opportunities to use Plaintiff's skillset.  Luken Dep. pp. 52-53, 58-59, 116-17.  In late Spring 2022, Luken engaged Plaintiff on the early, conceptual stages of the Workday implementation process.  Plf. Dep. pp. 38-42; Luken Dep. pp. 52-54, 56-57, 115.  In Plaintiff's June 2022 performance evaluation, Luken noted that Plaintiff's role had been refocused to work on the implementation of Veeva's HRIS project, meaning Workday.  Plf. Dep. pp. 39-42; Plf. Dep. Ex. 5; Luken Dep. pp. 53-54, 56-59.  Nonetheless, Plaintiff did not fit Luken's ideal for an architect for the Workday implementation – Luken believes an architect should have substantive knowledge of the business areas for which they are building an application so that they can have meaningful interactions with business partners in those areas.  Luken Dep. pp. 64-68.  For example, Luken believes an architect working on a financial system should understand basic finance concepts such as balance sheets and profit and loss statements.  *Id.*  Notably, Plaintiff had no experience with human resources systems.  Plf. Dep. p. 18.

**VI.**    **Veeva Granted Plaintiff an Extended Medical Leave of Absence.**

On July 11, 2022, Plaintiff emailed Luken and told him he was suffering from a mental health crisis. Plf. Dep. p. 47; Plf. Dep. Ex. 6. This was the first time Plaintiff informed Luken that he was suffering from a mental health issue. Plf. Dep. pp. 47-48; Luken Dep. p. 97. At the time Plaintiff emailed Luken, Plaintiff believed he was no longer able to perform his job duties and he needed time off work. Plf. Dep. pp. 48-49. Luken took Plaintiff's correspondence seriously, was supportive of him, and urged him to take a step back from work to focus on his health. Plf. Dep. pp. 49-51; Plf. Dep. Ex. 6. Plaintiff was off work for approximately three weeks before he temporarily returned to work on August 1 and 2, 2022. Plf. Dep. p. 54; Luken Dep. pp. 90-91.

Plaintiff then requested a leave of absence related to his depression and anxiety. Plf. Dep. p. 55. Veeva informed Plaintiff that his leave of absence request was granted, that it was designated as Family and Medical Leave Act ("FMLA") leave, and that his leave would begin on August 8, 2022. Plf. Dep. pp. 56-57; Plf. Dep. Ex. 8. On August 22, 2022, Plaintiff's physician indicated that Plaintiff was unable to perform the essential functions of his position at that time, but that he would be able to return to work on October 10, 2022. Plf. Dep. pp. 57-58; Plf. Dep. Ex. 9. Veeva granted Plaintiff's leave. Plf. Dep. p. 58.

Plaintiff did not return to work on October 10, 2022. Plf. Dep. p. 59. Plaintiff's physician extended his leave through November 14, 2022, 14 weeks after his leave initially began. Plf. Dep. pp. 59-60; Plf. Dep. Ex. 11. This extension was granted. Plf. Dep. pp. 60-61; Plf. Dep. Ex. 12. Subsequently, Plaintiff's physician extended Plaintiff's leave until November 25, 2022, although Plaintiff did not return to work at that time. Plf. Dep. pp. 62-63. Plaintiff's psychologist requested that Plaintiff's leave be extended to January 16, 2023 and then January 30, 2023. Plf. Dep. pp. 64-66; Plf. Dep. Ex. 14, 15. Even then, Plaintiff's psychologist indicated that Plaintiff was not fully

ready to return to work and that he needed a partial schedule for four weeks.  Plf. Dep. p. 66; Plf. Dep. Ex. 16.

**VII.    Veeva Terminated Plaintiff's Employment Because His Skills Did Not Fit the Company's Needs.**

During Plaintiff's leave, Luken and his team continued with Workday implementation and Luken personally picked up many of the duties he had contemplated giving to Plaintiff on the project.  Plf. Dep. p. 70; Luken Dep. pp. 107-08.  As the planning on the project progressed, Luken developed a better idea of what Veeva needed from Workday.  Plf. Dep. pp. 70-71; Luken Dep. pp. 81-82.  Veeva narrowed the scope of the implementation by eliminating several modules and integrations, meaning the Workday implementation was significantly less complex than Luken initially envisioned and did not require the services of an architect.  Plf. Dep. pp. 70-71; Luken Dep. pp. 130-33.  By October 2022, Luken was starting to determine what roles were necessary to implement Workday in 2023, and by December 2022, when Veeva finalized the Workday contracts and finalized the scope of the project, Luken believed that an architect was not the right fit for the project.  Plf. Dep. pp. 70-71; Luken Dep. pp. 54, 122-23, 130-33, 142-45.

Luken believed he had little use for an architect within his Finance and Employee Success functions, including the Workday implementation; as such, he never hired any architects onto his team or had any architect other than Plaintiff.  Luken Dep. pp. 69-71, 121-23, 207, 217.  Instead of an architect, Luken determined that he needed a business analyst, a lower-level employee than an architect, someone who had hands-on experience working with Workday who could work directly in the application on a frequent basis in collaboration with Employee Success Business Partners who used Workday.  Luken Dep. pp. 130-32; Luken Dec. ¶¶ 11-13.  In late 2022, Luken started looking for a business analyst with Workday experience.  Luken Dep. pp. 145-46.  He ultimately hired Genna Spencer for the role.  Plf. Dep. p. 76; Luken Dep. p. 163.

7

In January 2023, Luken spoke with Employee Success Business Partner Liz Beggs about Plaintiff not being a good fit for the Workday project and Luken's preference to hire a business analyst with experience working in Workday. Plf. Dep. pp. 69-70; Luken Dep. pp. 155-57. Luken concluded that as the landscape of the Workday project had narrowed and the NetSuite project had been canceled, he did not need an architect on his team and that Plaintiff was not a good fit for continued employment. Plf. Dep. pp. 69-70; Plf. Dep. Ex. 18; Luken Dep. pp. 38, 79-80, 108, 111-12, 113-14, 122-23, 129-33, 156-57, 169, 173-74, 205-06, 207, 214, 217; Luken Dep. Ex. 1, Interrogatory 11. Beggs completed an Involuntary Termination Approval Form based on her conversations with Luken. Plf. Dep. pp. 69-70; Luken Dep. pp. 160-61; Luken Dep. Ex. 11. The form indicates that DeLeo had hired an architect, that Luken did not have the same vision for his team that DeLeo did, that Luken did not believe he needed an architect for the projects he was completing, and that the IT Application Architect role consequently was being eliminated. Plf. Dep. pp. 69-70; Luken Dep. Ex. 11. Luken and Beggs notified Plaintiff of his termination on February 7, 2023. Plf. Dep. pp. 68-69. In May 2023, after a brief period of unemployment, Plaintiff obtained employment at Perficient, earning a higher salary than he had at Veeva. Plf. Dep. pp. 23-24, 82-83.

## VIII.  Plaintiff's Claims.

On March 21, 2023, Plaintiff filed a five-count Complaint claiming disability discrimination in violation of the Americans with Disabilities Act ("ADA") and O.R.C. § 4112 and retaliation in violation of the ADA, O.R.C. § 4112, and the FMLA. Plf. Dep. pp. 73-74; Plf. Dep. Ex. 22. Plaintiff states that his disability discrimination claims relate to his depression and anxiety. Plf. Dep. p. 75. Plaintiff claims Veeva discriminated against him because of his alleged

disability, because he allegedly requested an accommodation[3], and because he took FMLA leave. Plf. Dep. Ex. 22, ¶¶ 22, 23.  However, Plaintiff admits that: (1) DeLeo wanted to hire him to replace NetSuite; (2) DeLeo's employment ended and the NetSuite replacement project was canceled shortly after Plaintiff's hire; (3) he does not know the details of Luken's or Luken's team's work during the period when he was on medical leave; (4) he does not know who made the decision to terminate his employment; (5) he does not know when Veeva made the decision to terminate his employment; and (6) he does not know why Veeva made the decision to terminate his employment. Plf. Dep. pp. 27-29, 69-70.

Luken made the decision to terminate Plaintiff's employment.  Luken Dep. pp. 109-10. Luken testified under oath that Plaintiff's leave of absence did not impact his decision to terminate Plaintiff's employment – Luken terminated Plaintiff's employment because he did not need an architect, not because of Plaintiff's leave of absence.  Plf. Dep. pp. 69-70; Luken Dep. pp. 129-30, 176-77, 210.  Luken further testified under oath that Plaintiff's medical conditions played no role in the decision to terminate his employment.  Plf. Dep. pp. 69-70; Luken Dep. p. 210.  This testimony is undisputed.  Plf. Dep. pp. 69-70.

## ARGUMENT[4]

I.       **The Applicable Burden-Shifting Standard.**

"Ohio disability discrimination law generally applies the same analysis as the ADA." *Williams v. Mid-Am. Conversion Servs., LLC*, No. 2:22-cv-2052, 2023 U.S. Dist. LEXIS 219957, at *14 (S.D. Ohio Dec. 11, 2023); *see also Peterie v. Leidos, Inc.*, No. 3:21-cv-042, 2022 U.S.

---

[3] Plaintiff claims in his Complaint that he requested accommodations in the form of short-term disability leave, long-term disability leave, and FMLA leave and he admits that he was granted all three.  Plf. Dep. p. 77; Plf. Dep. Ex. 22, ¶ 28.

[4] Pursuant to Judge Watson's Standing Order, Veeva has not included a recitation of the summary judgment standard.

Dist. LEXIS 178381, at *16, n.6 (S.D. Ohio Sept. 19, 2022) (internal quotation removed) ("Because Ohio Revised Code § 4112.02 mirrors the ADA, the Court will apply the ADA's legal standard to this statute").  As such, the Court should analyze Plaintiff's ADA claims and state law disability and retaliation claims under the same burden-shifting standard.  FMLA retaliation claims are also analyzed under the same burden-shifting framework as ADA retaliation claims.  *Robinson v. Compass Grp. United States, Inc.*, No. 22-1819, 2023 U.S. App. LEXIS 21444, at *3-4 (6th. Cir. Aug. 16, 2023).

To establish a *prima facie* case of disability discrimination, Plaintiff must prove: (1) he is disabled; (2) he was otherwise qualified for his position, with or without reasonable accommodation; (3) he suffered an adverse action; (4) Veeva knew or had reason to know of his disability; and (5) his position remained open or a non-disabled person replaced him.  *Swiger v. Confluence Corp.*, No. 2:22-cv-3752, 2024 U.S. Dist. LEXIS 43218, at *13 (S.D. Ohio Mar. 12, 2024).  To establish a *prima facie* case of retaliation, Plaintiff must prove: (1) he engaged in a protected activity; (2) the activity was known to Veeva; (3) Veeva took adverse action against Plaintiff; and (4) there was a causal connection between the protected activity and the adverse action.  *Down v. Ann Arbor Pub. Sch.*, No. 20-2114, 2021 U.S. App. LEXIS 37033, at *10-11 (6th Cir. Dec. 13, 2021); *Nathan v. Great Lakes Water Auth.*, 992 F.3d 557, 573 (6th Cir. 2021).

Assuming for argument's sake that Plaintiff could establish his *prima facie* cases, the burden of production would shift to Veeva to articulate a legitimate nondiscriminatory and non-retaliatory reason for its actions.  *Santiago v. Meyer Tool Inc.*, No. 22-3800, 2023 U.S. App. LEXIS 14469, at *10 (6th Cir. Jun. 8, 2023).  Once Veeva does so, the burden reverts to Plaintiff, who must show by a preponderance of the evidence that Veeva's reasons are pretext for discrimination or retaliation.  *Id.* at *10-11.

**II.     Plaintiff Cannot Prove His *Prima Facie* Cases.**

    **A.     Plaintiff Cannot Establish a *Prima Facie* Case of Disability Discrimination.**

Plaintiff cannot prove his *prima facie* case of disability discrimination because he cannot prove he was otherwise qualified for his position.  "An individual who cannot perform the essential functions of a job is not qualified, and in such cases, the ADA does not come into play."  *Roseman v. Linmore Invs., Inc.*, No. 1:17-cv-826, 2021 U.S. Dist. LEXIS 154429, at *9 (S.D. Ohio Aug. 17, 2021).  Plaintiff admitted under oath that he informed Luken of his mental health crisis in July 2022 because he "was no longer able to perform [his] duties … ."  Plf. Dep. p. 48.  Plaintiff's physician indicated in August 2022 that Plaintiff needed a leave of absence because "[d]ue to his medical condition he is currently unable to perform the essential functions of his position."  Plf. Dep. Ex. 9.  Plaintiff then took a leave of absence for approximately six months, during which he was unable to perform the essential functions of his job.  Even when Plaintiff's psychologist proposed that Plaintiff return to work, it was only on a part-time basis and the job description for the position clearly indicates that the IT Application Architect position is a full-time job.  Plf. Dep. Ex. 3.  As such, Plaintiff cannot prove he was otherwise qualified for his position and cannot prove his *prima facie* case of disability discrimination.

    **B.     Plaintiff Cannot Make a *Prima Facie* Case of Retaliation.**

Plaintiff also cannot establish a *prima facie* case of disability or FMLA retaliation, as he cannot establish that there was a causal connection between any protected activity and his termination. Six months passed between the start of Plaintiff's FMLA leave and his termination. This is far too long to establish a causal connection.  In *Brown v. VOCA Corp*, No. 2:18-cv-542, 2020 U.S. Dist. LEXIS 264962 (S.D. Ohio Oct. 21, 2020) (Watson, J.), this Court held that a period of less than two months between a protected activity and an adverse action could establish a causal connection.  *Id* at *11.  In *Williams v. Mid-Am. Conversion Servs., LLC*, two months passed

between the plaintiff's protected activity and the adverse employment action at issue. *Williams*, 2023 U.S. Dist. LEXIS 219957, at *29. The court ruled that this was too long to establish a causal connection and granted summary judgment for the employer. *Id.* at 28-30. Here, Plaintiff cannot establish any causal connection between his medical leave and his termination through temporal proximity, and he has not identified any other evidence to establish causation. As such, his *prima facie* case must fail.

**III.    Veeva Had a Legitimate, Nondiscriminatory and Non-Retaliatory Reasons for Plaintiff's Termination and Plaintiff Cannot Establish Pretext.**

Even assuming Plaintiff could establish his *prima facie* cases, his claims must fail because he cannot prove that Veeva's legitimate, nondiscriminatory and non-retaliatory reasons for its employment decisions were a pretext for discrimination or retaliation.

**A.    Veeva's Reason for Plaintiff's Termination Was Legitimate, Nondiscriminatory, and Non-Retaliatory.**

Veeva's burden to articulate a legitimate, nondiscriminatory and non-retaliatory reason "is quite low; it is only 'one of production, not persuasion,' and [the Court] make[s] 'no credibility assessment.'" *Santiago*, 2023 U.S. App. LEXIS 14469, at *11, quoting *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). Veeva has a legitimate, nondiscriminatory and non-retaliatory reason for Plaintiff's termination. Luken did not believe an architect was a good fit for his team. The NetSuite replacement project that primarily motivated Plaintiff's hire was canceled shortly after Plaintiff was employed. Although Luken tried to find a role for Plaintiff on the Workday implementation, the scope of the project narrowed such that he did not need an architect. Luken had no other assignments to give an architect and generally did not believe an architect was necessary on his team. As such, Plaintiff's skillset was not a fit for Veeva's needs and Veeva terminated his employment.

### B.     Plaintiff Cannot Prove Pretext.

To establish pretext, Plaintiff must prove that Veeva's reason: "(1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or 3) was insufficient to warrant the challenged conduct." *Pio v. Benteler Auto. Corp.*, No. 21-1231, 2022 U.S. App. LEXIS 3564, at *19 (6th Cir. Feb. 7, 2022).  Under the first method, Plaintiff would have to prove that the proffered reasons for his termination never occurred.  *Santiago*, 2023 U.S. App. LEXIS 14469, at *14. Under the second method, Plaintiff would have to "indict the credibility of [his] employer's explanation by showing circumstances which tend to prove that an illegal motivation was *more* likely than that offered by the defendant."  *Id.* at *16 (emphasis in original).  Under the third method, Plaintiff would have to show that similarly-situated employees outside his protected classes were not terminated despite engaging in substantially-identical conduct.  *Id.* at *19.

Plaintiff cannot prove pretext using any of these methods.  As stated above, he admits that: (1) DeLeo wanted to hire him to replace NetSuite; (2) DeLeo's employment ended and the NetSuite replacement project was canceled shortly after Plaintiff's hire; (3) he does not know the details of Luken's or Luken's team's work during the period when he was on medical leave; (4) he does not know who made the decision to terminate his employment; (5) he does not know when Veeva made the decision to terminate his employment; and (6) he does not know why Veeva made the decision to terminate his employment. Plf. Dep. pp. 27-29, 69-70.  As such, Plaintiff has no relevant knowledge about the facts underlying his termination, so he cannot prove pretext by the first or second methods.  Moreover, he has never identified any similarly-situated employees outside his protected classes who were treated more favorably, so he cannot prove pretext by the third method.  In fact, Luken testified that Plaintiff was the only architect who ever worked on his team.  Luken Dep. pp. 70, 121-22.  In short, Plaintiff has no evidence to establish pretext.  As such, Plaintiff's claims must fail with prejudice as a matter of law.

**CONCLUSION**

For the foregoing reasons, Veeva respectfully requests that the Court grant summary judgment in its favor, dismiss Plaintiff's Complaint with prejudice, and grant Veeva such other relief as the Court deems appropriate.

Dated:   April 29, 2024                                         Respectfully submitted,

/s/Douglas M. Oldham
Mark W. Wallin (Admitted *pro hac vice*)
mark.wallin@btlaw.com
BARNES & THORNBURG LLP
One North Wacker Drive
Suite 4400
Chicago, Illinois  60606
Telephone:     (312) 357-1313
Facsimile:     (312) 759-5646

Douglas M. Oldham (0088927)
douglas.oldham@btlaw.com
BARNES & THORNBURG LLP
41 South High Street, Suite 3300
Columbus, Ohio 43215
Telephone:     (614) 628-0096
Facsimile:     (614) 628-1433

*Attorneys for Veeva Systems, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of April 2024, a true and accurate copy of the foregoing document has been served to all parties through the Court's filing system.

/s/ Douglas M. Oldham

14