UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Ian Scott,

    Plaintiff,

v.

Veeva Systems,

    Defendant.

Case No. 2:23-cv-1027

Judge Michael H. Watson

Magistrate Judge Vascura

## OPINION AND ORDER

Veeva Systems ("Defendant") moves for summary judgment on Ian Scott's ("Plaintiff") claims. ECF No. 20. For the following reasons, the motion is **DENIED**.

### I.    FACTS

Additional facts will be provided in the analysis section, but an overview of the facts is as follows. In 2021, Defendant hired Plaintiff to be an IT Application Architect. Pl. Dep. 21:15–18; 23:10–16, ECF No. 21-1. When Plaintiff was hired, Defendant had plans to replace one of its major computer systems with a new program (the "Program"), and Plaintiff's supervisor wanted an IT Application Architect to help with the transition. *Id.* at 27:9–12. Shortly after Defendant hired Plaintiff, however, Defendant fired the supervisor and put plans for the Program "on the back burner." *Id.* at 28:1–29:12. Several months later, Casey Luken ("Luken") became Plaintiff's new supervisor. *Id.* at 35:22–36:5.

In mid-July 2022, Plaintiff told Luken that he was suffering from a major mental health crisis. July 2022 emails, ECF No. 21-1 at PAGEID #127–28. At Luken's encouragement, Plaintiff took a couple of weeks off work before temporarily returning in early August. Luken Dep. 90:24–91:2, ECF No. 21-5. At that time, Plaintiff formally requested a medical leave. Aug. 2022 Letter, ECF No. 21-1 at PAGEID #125–26. Defendant approved the leave request and told Plaintiff that the leave would be designated as leave under the Family Medical Leave Act ("FMLA"). *Id.* At first, Plaintiff thought he would return to work in October 2022, but Plaintiff's medical providers repeatedly extended the date through the end of January 2023. Pl. Dep. 58:16–66:6, ECF No. 21-1. When Plaintiff could return to work, his doctor requested that Plaintiff be allowed to work a part-time schedule for four weeks. *Id.* at 66:10–16. In early February 2023, Defendant fired Plaintiff. *Id.* at 68:23–69:9.

Based on these facts, Plaintiff sued Defendant, asserting claims under the FMLA, the Americans with Disabilities Act ("ADA"), and analogous state laws. *See generally*, Compl., ECF No. 1.

## II. STANDARD OF REVIEW

The standard governing summary judgment is set forth in Federal Rule of Civil Procedure 56(a): "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

The Court must grant summary judgment if the opposing party "fails to make a showing sufficient to establish the existence of an element essential to that party's case" and "on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, who must set forth specific facts showing there is a genuine dispute of material fact for trial, and the Court must refrain from making credibility determinations or weighing the evidence. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 255 (1986) (citations omitted). The Court disregards "all evidence favorable to the moving party that the jury would not be required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000) (citation omitted). Summary judgment will "not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248 (internal citations and quotation marks omitted).

The Court is not "obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). The Court may rely on the parties to call attention to the specific portions of the record that demonstrate a genuine issue of material fact. *Wells Fargo Bank, N.A. v. LaSalle Bank N.A.*, 643 F. Supp. 2d 1014, 1022 (S.D. Ohio 2009).

## III. ANALYSIS

Defendant moves for summary judgment on Plaintiff's claims. Mot., ECF No. 20. The Court considers each claim, in turn.

### A. Disability Discrimination

Plaintiff asserts claims for disability discrimination under the ADA and analogous state law. Compl. ¶¶ 25–39, ECF No. 1. "In interpreting the Ohio disability discrimination statute, the Ohio Supreme Court looks to regulations and cases interpreting the Americans with Disabilities Act for guidance"; therefore, the Court evaluates the ADA claim and analogous Ohio-law claim together. *Breier v. ITT Auto., Inc.*, 98 F. App'x 458, 459 (6th Cir. 2004) (citing Ohio law).

Title I of the ADA prohibits a "covered entity" from discriminating "against a qualified individual on the basis of disability" in employment. 42 U.S.C. § 12112(a). Like other types of discrimination, a plaintiff can prove ADA discrimination "in two ways, either directly or indirectly, and each has its own test." *Blanchet v. Charter Commc'ns, LLC*, 27 F.4th 1221, 1227 (6th Cir. 2022) (citation omitted). Plaintiff is bringing his claim with indirect evidence. Resp. 9, ECF No. 22.

When a plaintiff pursues an ADA discrimination claim with indirect evidence, she proceeds under the *McDonnell Douglas* framework. *Bennett v. Hurley Med. Ctr.*, 86 F.4th 314, 325 (6th Cir. 2023) (citation omitted). That framework "first requires the plaintiff to establish a prima facie case of discrimination." *Id.* (citations omitted). To make out a prima facie case of

discrimination, a plaintiff must show that: (1) "she has a disability"; (2) "she is otherwise qualified"; and (3) "she was being excluded from participation in, denied the benefits of, or subjected to discrimination under the program because of her disability." *Id.* (quotation marks and citation omitted).

Defendant argues that Plaintiff cannot show he was "otherwise qualified for the position." Mot. 11, ECF No. 20. Defendant contends that full-time employment was an essential function of the job and that Plaintiff could not work full time (as shown by the medical leave). *Id.* Therefore, argues Defendant, Plaintiff cannot show he was "otherwise qualified." *Id.*

In Plaintiff's view, the medical leave was a "reasonable accommodation," and, with that reasonable accommodation, he could perform the essential functions of the jobs. Resp. 9–10, ECF No. 22. At the heart of the issue, then, is whether Plaintiff's medical leave was a reasonable accommodation.

A "medical leave can constitute a reasonable accommodation under the ADA." *Blanchet*, 27 F.4th at 1229 (quotation marks and citation omitted). The Sixth Circuit has "declined to adopt a bright-line rule defining a maximum duration of leave that can constitute a reasonable accommodation." *Cleveland v. Fed. Express Corp.*, 83 F. App'x 74, 78 (6th Cir. 2003). When evaluating whether a particular leave is reasonable, courts consider: "(1) the amount of leave sought; (2) whether the requested leave generally complies with the employer's leave policies; and (3) the nature of the employee's prognosis, treatment, and likelihood of recovery." *Kindred v. Memphis Light, Gas & Water*,

No. 22-5360, 2023 WL 3158951, at *7 (6th Cir. Feb. 27, 2023) (quotation marks and citation omitted).

Here, there is a genuine dispute of material facts as to whether Plaintiff's leave was a reasonable accommodation. First, consider the length of the leave. Plaintiff was on medical leave for six months. *See* Aug. 2022 Letter, ECF No. 21-1 at PAGEID #125–26; Pl. Dep. 58:16–66:6, ECF No. 21-1. Courts have found shorter leaves unreasonable, and longer leaves reasonable, depending on the circumstances of the case. *Compare Blanchet*, 27 F.4th at 1229–31 ("A reasonable jury could find that [the] proposed accommodation [of seven months' leave was reasonable[.]") *with Stallings v. Detroit Pub. Sch.*, 658 F. App'x 221, 226–27 (6th Cir. 2016) (concluding that the plaintiff did not show "that four months of leave is reasonable." (citation omitted)). Thus, the Court cannot say that this factor favors either reasonableness or unreasonableness; that is for the jury to decide.

As to the second factor—whether the leave complied with Defendant's policies—the parties have not briefed that factor. The Court will not delve into the record on its own to find Defendant's leave policies and determine, without the parties' input, whether Plaintiff's leave complied with the same. Again, then, which side this factor favors is better left for the jury to decide.

Finally, the Court turns to the nature of Plaintiff's "prognosis, treatment, and likelihood of recovery." Again, there are facts that cut both ways. On Defendant's side, Plaintiff's medical providers repeatedly pushed back his return-

to-work date, and, at the time Defendant fired Plaintiff, Plaintiff had arguably not yet been cleared for full-time employment; these facts could indicate Plaintiff had no definite "recovery date." *See Caldwell v. MGM Grand Detroit, LLC*, No. 23-1436, 2024 WL 2182406, at *3 (6th Cir. Jan. 5, 2024) (concluding a requested leave was unreasonable in part because there was "no clear prospects for recovery"). On the other hand, that Plaintiff was cleared for part-time work shows his condition was improving and, by extension, would not be indefinite. *Cf. Kindred*, 2023 WL 3158951, at *6 ("Where an employer has already provided an employee with a lengthy period of medical leave, an extension to that leave can be a reasonable accommodation only when its duration is definite." (cleaned up)). Thus, there is a factual dispute about whether this third factor favors reasonableness.

At bottom, there is a genuine dispute of material fact as to whether Plaintiff's medical leave was an accommodation. Accordingly, Defendant is not entitled to summary judgment on the disability discrimination claim.

**B.** **Retaliation**

Plaintiff asserts claims for retaliation under the ADA, FMLA, and analogous state laws. *See generally*, Compl., ECF No. 1. Courts examine retaliation claims under the ADA, FMLA, and Ohio law under the same framework. *See Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006) (FMLA); *Kindred*, 2023 WL 3158951, at *7 (ADA); *Worsham v. Anthem Ins. Companies, Inc.*, No. 1:21-CV-331, 2023 WL 2716596, at *5 (S.D. Ohio Mar. 30, 2023) ("[R]etaliation claims

under Ohio law apply the same analytical framework as retaliation claims under Title VII and the ADA." (citation omitted)).

Plaintiff asserts his retaliation claims under both "mixed motive" and "single motive" theories. *E.g.*, Resp. 7–9, ECF No. 22. Because Plaintiff's retaliation claims survive summary judgment under a single motive theory, the Court need not decide whether they also survive under a mixed motive theory. However, before trial, Plaintiff will need to submit a notice explaining which theories he intends to use at trial; this notice must cite legal authority to support that a mixed motive theory is available for any claim for which Plaintiff plans to use the theory and should brief what remedies are available for a mix-motive theory for each type of claim.[1]

When proceeding on a single-motive retaliation claim with indirect evidence (as Plaintiff does here), a plaintiff must follow the *McDonnell Douglas* framework outlined above: first, the plaintiff must establish a prima facie case of retaliation; then the employer has the burden of articulating a nondiscriminatory reason for the adverse action; finally, the burden shifts back to the plaintiff to show the proffered reason is pretextual. *See, e.g.*, *Kindred*, 2023 WL 3158951, at *7 (citations omitted); *Jones v. W. Rsrv. Transit Auth.*, 455 F. App'x 640, 646 (6th Cir. 2012) (citing cases).

---

[1] If Plaintiff intends to proceed on his ADA retaliation claim on a mixed-motive theory, he is strongly encouraged to consider *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012).

### 1. Prima Facie Case

To make out a prima facie case of retaliation, a plaintiff must prove that: (1) "she availed herself of a protected right"; (2) "she suffered an adverse employment action"; and (3) "there was a causal connection between the exercise of her rights . . . and the adverse employment action." *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006) (cleaned up).

Defendant challenges only the third prong. As for the third prong, a plaintiff must "produce sufficient evidence to support an inference" that the employer took an adverse action because a plaintiff exercised his protected rights. *Johnson v. Fifth Third Bank*, 685 F. App'x 379, 385 (6th Cir. 2017) (quotation marks and citation omitted). In other words, "[e]stablishing a prima facie case" of retaliation under the *McDonnell Douglas* framework "is easily met." *Id.* at 384–85 (internal quotations and citation omitted).

Here, there is a genuine dispute of material fact as to causation. Plaintiff offers the following to support causation: (1) the temporal proximity between when he took leave and a low performance review ("substandard work" was cited as a reason for Plaintiff's termination, *see* Termination Approval Form, ECF No. 21-5, at PAGEID # 338); (2) the low performance review mentioned that Plaintiff was on medical leave; (3) the discrepancy between a pre-leave positive review and the post-leave negative review (and the fact that Plaintiff was on leave for most of the time between the positive review and the negative review); and (4) Luken's testimony that Plaintiff's medical leave was "considered" or "taken into

account" when making the decision to fire Plaintiff. A reasonable jury could consider these facts and conclude that Defendant fired Plaintiff because of his protected activities. *See Cutcher v. Kmart Corp.*, 364 F. App'x 183, 190–91 (6th Cir. 2010) (concluding that there was a genuine dispute of material fact on the causation prong of a prima facie retaliation case when the employer noted medical leave on a negative review and when the employee had an unexplained—and significant—drop in review scores before and after she took medical leave).

Defendant disagrees. According to Defendant, many facts show that it fired Plaintiff for only legitimate reasons and, therefore, Plaintiff cannot prove causation. Reply, ECF No. 23. For example, Defendant argues that the poor review is irrelevant because it did not fire Plaintiff for performance reasons and reiterates its position that it fired Plaintiff because it no longer needed an IT architect. *Id*. Defendant is free to present these facts to a jury—and a jury would be free to find that these facts demand a verdict in Defendant's favor. But Defendant's evidence against causation does not change that Plaintiff has presented enough specific facts to survive summary judgment.

Accordingly, there is a genuine dispute of material fact as to whether Plaintiff can establish a prima facie case of retaliation.

### 2. Legitimate, Non-Discriminatory Reason

Defendant has proffered a legitimate, nondiscriminatory reason for firing Plaintiff: Defendant no longer needed an IT architect. *E.g.*, Mot. 12, ECF No. 20.

### 3. Pretext

A plaintiff can establish pretext by raising a genuine dispute of material fact that the proffered reason: (1) "has no basis in fact"; (2) "did not actually motivate the adverse employment action"; or (3) "was insufficient to warrant the adverse action." *Kindred*, 2023 WL 3158951, at *7 (quotation marks and citation omitted). "To demonstrate pretext, a plaintiff must show both that the defendant's proffered reason was not the real reason for its action, and that the real reason was unlawful." *Id.* (cleaned up).

Plaintiff raises a genuine dispute of material fact as to whether the proffered reason did not actually motivate his termination. Plaintiff offers the following to support pretext: temporal proximity between taking leave and the low ranking; the lack of temporal proximity between Defendant's decision to not use the Program ( Defendant initially hired an IT architect to help transition to the Program) and Plaintiff's termination; Plaintiff's history of positive reviews; discrepancies between positive reviews and the post-leave negative review; and the note that Plaintiff was on medical leave in the negative review. The Sixth Circuit has concluded that nearly identical facts created a jury question about causation in an FMLA retaliation case:

> [T]he following facts could show pretext: the temporal proximity between [the plaintiff's] leave and termination; the lack of documentation to corroborate her lower [performance review] appraisal scores; the lack of temporal proximity between the events that [the employer] alleges justified her lower [performance review] appraisal scores and her termination; her documented favorable work history; the discrepancy between her prior annual appraisals and her

[performance review] appraisal, and the ["leave of absence"] notation next to [the plaintiff's] name on the Impacted Associates Form.

*Cutcher*, 364 F. App'x at 191. Thus, just as there was a genuine dispute of material fact in *Cutcher*, there is one here.

Defendant again disagrees, pointing to facts that are, in Defendant's view, meaningfully distinguishable between *Cutcher* and this case. Reply 10–11, EC No. 23. For example, Defendant argues that there was more time between Plaintiff's positive performance review and the later negative review and termination, and that, at least according to Defendant, Plaintiff's negative review was not a reason for his termination. *Id.*

Defendant's argument only emphasizes the factual dispute over pretext. That is, a reasonable jury could consider Defendant's pointed-to facts and find those facts undercut Plaintiff's position. Such a finding is for the jury, not the Court. In sum, although Defendant is correct that there are some differences between *Cutcher* and this case, those difference do not resolve the genuine dispute of material fact as to pretext.

At bottom, Defendant is not entitled to summary judgment on the retaliation claims.

## IV. CONCLUSION

For these reasons, the motion for summary judgment is **DENIED**. The parties are **ORDERED** to participate in mediation before the Court sets a trial date. My staff are available to mediate, the Court can refer this case to an

outside volunteer mediator, or the parties may hire a private mediator at their own expense. The parties are **ORDERED** to file a notice explaining their preferences for mediation **WITHIN THIRTY DAYS**.

The Clerk shall terminate ECF No. 20.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**